J-S05014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.N.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.D.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1264 MDA 2021 |

Appeal from the Decree Entered September 2, 2021
In the Court of Common Pleas of Luzerne County
Orphans' Court at No(s): A-9124

| | | |
|---|---|---|
| IN THE INTEREST OF: N.S.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.D.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1282 MDA 2021 |

Appeal from the Decree Entered September 2, 2021
In the Court of Common Pleas of Luzerne County
Orphans' Court at No(s): A-9110

BEFORE:  PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED MARCH 31, 2022**

N.D.P., the natural father of N.P. (slightly over three years old) and F.P. (almost two years old), appeals from the orders terminating his parental rights to his children. On appeal, Father argues that the local child welfare agency, Luzerne County Children and Youth Services ("CYS"), failed to make sufficient

efforts to preserve the family unit before seeking to terminate his parental rights. We affirm.

Both children were removed from their natural parents' custody within one month of their birth, due to substance abuse issues, domestic violence concerns, and Father's incarceration. Both children were subsequently adjudicated dependent and have remained with their foster families since. Approximately thirteen months after F.P. was born, CYS filed petitions to terminate Father's parental rights.

At the hearing, Father conceded he had not completed the recommended drug treatment or parenting education classes. However, he asserted he had participated in various therapies while serving his prison sentence. He contended these efforts constituted substantial compliance with his family reunification plan. In contrast, CYS presented evidence that Father had not successfully completed any treatment program and had failed to make even minimal efforts to maintain a relationship with the children.

The trial court found Father not credible and found CYS's evidence credible. It therefore granted CYS's petition to terminate Father's parental rights. Father then filed these timely appeals.[1]

On appeal, Father raises two challenges to the termination of his parental rights. He first contends the trial court erred in failing to consider the

---

[1] This Court consolidated the appeals *sua sponte* on November 9, 2021.

services he completed while in prison, and that such failure constitutes reversible error. Second, he argues the trial court's decision was against the weight of the evidence.

We apply a deferential standard of review in appeals from orders terminating parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

CYS bore the burden of proving, by clear and convincing evidence, that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and internal quotation marks omitted).

Here, the court terminated Father's parental rights pursuant to Section 2511(a)(2) for F.P., (a)(8) for N.P., and (b) for both children. We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Since the trial court terminated Father's rights to each child under a different subsection of Section 2511(a), we will address each child separately. The court terminated Father's rights to N.P. pursuant to Section 2511(a)(8). Under Section 2511(a)(8), CYS was required to produce clear and convincing evidence that: "(1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re*

*Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa. Super. 2003). In addition, we have explained the following:

> Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the [child]'s removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services.

*In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations and quotation marks omitted).

A parent is required "to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002) (citation and quotation marks omitted). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id.*

Here, it is undisputed that N.P. has been removed from Father's custody for more than 12 months. We therefore examine whether CYS presented clear and convincing evidence that the conditions that led to N.P.'s dependency had been remedied.

N.P. was removed from his natural parents' care due to drug abuse, anger management, and parenting skills issues. *See* N.T., 7/8/21, at 10-11. The court directed Father to submit to random drug screens and a mental

health evaluation as part of a reunification plan. *See id*., at 11. The court further required Father to follow all mental health recommendations, participate in parenting education services, and maintain safe and stable housing. *See id*.

Father's compliance with the drug abuse assessment and treatment started well but ended poorly. Scott Carey, the assistant chief executive officer of Wyoming Valley Alcohol and Drug Services ("WYVADS"), testified that Father attended medication assisted treatment at WYVADS. *See* N.T., 5/24/21, at 16. Father attended 56% of his scheduled appointments with this treatment program. *See id*., at 19. Father was "discharged unsuccessfully" from the program in December 2019 due to behavioral issues, including one incident which required police intervention. *See id*., at 20. After being closed out, Father made no further attempt to comply with drug treatment goals before he was incarcerated three months later. *See id*., at 26-7.

Father's compliance with mental health assessment and parenting education fared even worse. Paul Dorang, case manager for Family Service Association, testified that Father claimed to be receiving mental health treatment from an out-of-county provider, but Father never provided documentation to support his claim. *See id*., at 30. Father was referred to a domestic violence prevention program, but Father did not attend. *See id*., at 31. Further, Father did not consistently attend parenting education classes. *See id*., at 33-5.

Father conceded that he had failed to complete either the WYVADS drug treatment program or the parenting education program. *See* N.T. 7/8/21, at 72-3. He also admitted that domestic violence occurred in his relationship with the children's mother. *See id*., at 74. Finally, Father has had no contact with N.P. since May 2019. *See id*., at 70.

Based on this testimony, the trial court found that Father had addressed none of the conditions that led to N.P.'s dependency. *See* Trial Court Opinion, 11/1/2021, at 13-4. The evidence recounted above clearly supports the court's finding, and we can discern no error of law or abuse of discretion in its legal conclusions.

On appeal, however, Father argues that the court failed to consider evidence that Father had attempted to address CYS's concerns while he was incarcerated. *See* Appellant's Brief, at 9. We disagree. The trial court heard Father's testimony and weighed it against the competing evidence presented by CYS's witnesses. After weighing the evidence, the court explicitly found that it did not find Father's version of events credible and instead credited the testimony of the CYS witnesses. *See* Trial Court Opinion, 11/1/2021, at 12. Father has provided no reason for us to second guess the trial court's credibility determinations, and we are therefore bound by them. *See T.S.M.*, 71 A.3d at 267.

Turning to F.P., the trial court terminated Father's rights under Section 2511(a)(2). Under section 2511(a)(2), the moving party must produce clear

and convincing evidence that: (1) the parent's conduct demonstrates repeated and continued incapacity, abuse, neglect or refusal to assume parental responsibility for the child; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the parent will not remedy the causes of the incapacity, abuse, neglect or refusal. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2) are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***See In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002).

Here, the evidence is straightforward. Father conceded at trial that he has made no effort to have contact with F.P. since F.P. was born. ***See*** N.T., 7/8/2021, at 76. While we acknowledge that Father has been incarcerated for essentially all of that time, "the fact of incarceration alone does not obviate the duty to exercise reasonable firmness under the circumstances to maintain a secure parent/child bond." ***In Interest of A.P.***, 692 A.2d 240, 245 (Pa. Super. 1997) (citation omitted). "[A] parent is expected to utilize whatever resources are available to him while in prison in order to foster a continuing close relationship with his children." ***Id.*** Accordingly, Father's concession alone is enough to support the trial court's conclusion that Father has neglected to provide any care for F.P. during F.P.'s life. ***See In re V.E.***, 611

A.2d 1267, 1272-3 (Pa. Super. 1992) (finding that Father's failure to send cards to child while Father was imprisoned supported trial court's conclusion that Father's rights be terminated pursuant to Section 2511(a)(2)).

The only question left is whether Father will remedy the neglect. McGee testified that Father has made no progress towards alleviating the conditions that led to F.P.'s dependency. *See* N.T., 9/1/2021, at 29. The trial court also highlighted Father's excuses for his noncompliance with the reunification plan as cause to doubt Father's ability to remedy his neglect. *See* Trial Court Opinion, 11/1/2021, at 12. For example, Father testified that he didn't think he could write letters to his children from the jail because no one told him he could. *See* N.T., 7/8/2021, at 76. Father also complained that it was impossible to comply with the reunification plan. *See id*., at 50.

The trial court's factual findings and credibility determinations are well supported by the record. Based upon those findings, we cannot find any error or abuse of discretion in the trial court's conclusion that termination of Father's parental rights to F.P. was justified under Section 2511(a)(2).

Once again, Father complains on appeal that the court failed to consider evidence of his attempts to correct the conditions that led to F.P.'s dependency. And once again, we disagree. As with N.P., the trial court heard Father's testimony, but did not find it credible. None of Father's arguments

are sufficient to justify overruling the trial court's credibility determinations. Father's first argument on appeal merits no relief.[2]

In his second issue on appeal, Father contends the trial court's decision to terminate his parental rights was against the weight of the evidence. Initially, we note that Father's argument in support of this issue is underdeveloped. He includes no citation to relevant authority setting forth the legal justification for his requested relief, in violation of Pa.R.A.P. 2119(b). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-943 (Pa. Super. 2006).

In the absence of any legal argument in support of his claimed error, we cannot address Father's claim on the merits. To the extent that Father is simply rehashing his argument that the trial court failed to credit his testimony, we reference our prior discussion where we concluded Father has provided no basis for us to ignore the deference due to the trial court's credibility determinations. In any event, Father is due no relief on his second issue on appeal.

---

[2] Father's argument does not reference or in any way challenge the trial court's determination that CYS established grounds for termination pursuant to Section 2511(b). However, even if his argument was treated as raising a challenge to the court's conclusion that termination served the best interest of the children, we would find sufficient evidence to support the trial court's findings and conclusion of law. *See* N.T., 9/1/2021, at 29.

As Father's two issues on appeal merit no relief, we affirm the decrees terminating his parental rights to N.P. and F.P.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/31/2022